IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TARA WHETSTINE, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 21-02289 |
| WOODS SERVICES, | |
| Defendants. | |

**Slomsky, J.**                                                          **January 24, 2022**

## <u>OPINION</u>

### I.    INTRODUCTION

This action arises out of allegations by Plaintiff Tara Whetstine ("Plaintiff") that she was improperly terminated by her former employer, Woods Services ("Defendant"). (<u>See</u> Doc. No. 6.) More specifically, Plaintiff avers in an Amended Complaint that she was subject to sex discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] (<u>Id.</u> at 6, 8.) On September 22, 2021, Defendant filed a Motion to Dismiss Counts I and II of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 7.) On November 8, 2021, Plaintiff filed a response in opposition. (Doc. No. 11.) Defendant later filed a reply. (Doc. No. 13.) For reasons that follow, the Motion (Doc. No. 7) will be **GRANTED** in its entirety**.**

---

[1] Count I of the Amended Complaint alleges sex discrimination. (<u>See</u> Doc. No. 7.) Count II alleges sexual harassment. (<u>Id.</u>) Count III, which alleges a violation of the Family and Medical Leave Act ("FMLA"), is not being challenged in the Motion to Dismiss. (<u>Id.</u>)

## II.    BACKGROUND

### A. Factual Background

In August 2017, Plaintiff was hired by Defendant, a health management company, to serve as a school bus driver and Commercial Drivers License ("CDL") trainer.  (Doc. No. 6 ¶¶ 10-11.) She later served as a dispatcher.  (Id. at ¶ 11.)  During her employment, Plaintiff began a personal relationship with Kevin Whetstine ("Mr. Whetstine"), the Manager of Transportation.  (Id. ¶ 16.)[2] Six years prior to their relationship, Mr. Whetstine had been in a relationship with Dawn Diamond ("Diamond"), the Vice President of Operations.  (Id. ¶ 20.)

In the summer of 2019, Plaintiff was promoted to head dispatcher and CDL trainer.   (Id. ¶ 15.)   She was chosen for the promotion by Bill Poyte ("Mr. Poyte"), the Director of Transportation, Maintenance, Housekeeping & Laundry.  (Id. ¶ 19.)  Diamond was Mr. Poyte's supervisor.  (Id. ¶ 20.)   According to Plaintiff, prior to her promotion, Diamond learned of her relationship with Mr. Whetstine.  (Id. ¶ 23.)  Plaintiff then started having issues at work, which she alleges stems from Diamond's jealousy over her relationship with Mr. Whetstine.  (Id. ¶ 24.)

The work-related issues are described in the Amended Complaint as follows.  First, Diamond refused to sign off on Plaintiff's raise in salary.  (Id.  ¶ 25.)  Next, Diamond directed Human Resources to investigate the relationship between Plaintiff and Mr. Whetstine.  (Id. ¶ 26.) During the investigation, Plaintiff was asked questions "in a harassing and menacing manner." (Id.)  The Vice President of Human Resources told Plaintiff that she could be fired for refusing to

---

[2]    Plaintiff and Mr. Whetstine are now married.  (Doc. No. 6 at ¶ 17.)

answer questions. [3]  (Id.)  Moreover, although Plaintiff was provided intermittent FMLA leave, she was denied the ability to work overtime when she was on leave. [4]  (Id. ¶ 28.)

Around this same time, Mr. Whetstine was replaced as Manager of Transportation by Tyler Doan ("Mr. Doan").  (Id. ¶ 32.)  When Plaintiff complained about the denial of overtime, Mr. Doan admitted that Diamond did not want her to earn overtime and that it was "personal."  (Id. ¶ 33.) He later said that Diamond was "gunning for" Plaintiff.  (Id. ¶ 37.)  Further, at the direction of Diamond, Doan stood over Plaintiff's shoulder to ensure that she clocked out on time.  (Id. ¶ 34.) He also scanned her timesheets.  (Id. ¶ 35.)

On March 3, 2020, Plaintiff became ill and was hospitalized, which caused her to miss work.  (Id. ¶ 40.)[5]  As a result, she was terminated on March 13, 2020.  (Id. ¶ 43.)

After exhausting her administrative remedies with the Equal Employment Opportunity Commission (EEOC), Plaintiff filed her initial Complaint on May 19, 2021.  (Doc. No. 1.)  On July 19, 2021, Defendant filed its first Motion to Dismiss.  (Doc. No. 3.)  Subsequently, Plaintiff filed an Amended Complaint, which is the operative Complaint Defendant is seeking to dismiss.[6] (Doc. No. 6.)  As noted earlier, the Amended Complaint alleges two claims in violation of Title VII of the Civil Rights Act and one claim in violation of the FMLA: 1) Count I (sex discrimination), 2) Count II (sexual harassment) and 3) Count III (violation of the FMLA).[7]  With

---

[3]   Even though Plaintiff refused, she was not terminated at that time.  (Id.)

[4]   Plaintiff is aware of two other comparators who were allowed to work overtime while on intermittent FMLA leave. She believes she was not offered overtime because Diamond was retaliating against her.  (Id. at ¶ 30.)

[5]   Plaintiff missed work from March 4 to March 11, 2020.  (Id. ¶ 40.)

[6]   Because an Amended Complaint was filed, the first Motion to Dismiss was denied without prejudice as moot.  (See Doc. No. 5.)

[7]   Also as noted, Defendant has not moved to dismiss Count III.  (Doc. No. 7 at 5-6.)

respect to the sexual harassment claim, Plaintiff asserts that she was subject to both <u>quid pro quo</u> harassment as well as a hostile work environment.  (<u>Id.</u> at 8-9.)

    **B.  Defendant's Motion to Dismiss**

On September 22, 2021, Defendant filed its second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 7.)  The gravamen of the Motion is that the facts "ultimately describe only a personal animus unrelated to Plaintiff's sex."  (<u>Id.</u> at 8.)  Defendant asserts that Plaintiff's purported mistreatment concerned her relationship with Mr. Whetstine, rather than anything related to her sex. (<u>Id.</u>)  Further, as to Count II, Defendant claims that Plaintiff has not pled "severe or pervasive conduct" to support a hostile work environment claim under Title VII.  (<u>Id.</u> at 9-10.)  In addition, Defendant argues that Plaintiff does not have a plausible claim for <u>quid pro quo</u> harassment because she does not contend that any of Defendant's employees "made an unwelcome sexual advance towards her."  (<u>Id.</u> at 10.)

On November 8, 2021, Plaintiff filed a response in opposition.  (Doc. No. 11.)  In opposing the Motion to Dismiss Count I for sex discrimination, Plaintiff relies on <u>Bostock v. Clayton County</u>, 140 S. Ct. 1731 (2020).  In <u>Bostock</u>, the Supreme Court held that taking adverse action against an employee because the employee is gay or transgender amounts to unlawful sex discrimination under Title VII.  140 S. Ct. at 1754.  Plaintiff reasons that, under <u>Bostock</u>, an employee cannot be fired because of whom he or she is attracted to.  (Doc. No. 11 at 4.)   As to Count II, to support her claim that her workings conditions were severe and pervasive, she relies on her allegations that her supervisor looked over her shoulder, she was denied of a raise or overtime pay, Human Resources investigated her, and Doan commented that Diamond was "gunning for her" and that it was "personal."  (<u>Id.</u> at 7-8.)  Finally, Plaintiff contends that she has

pled <u>quid pro quo</u> sexual harassment because Plaintiff believed she could only keep her job if she ended her relationship with Mr. Whetstine.  (<u>Id.</u> at 9.)

**III.    STANDARD OF REVIEW**

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  After <u>Iqbal</u> it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  <u>Id.</u> at 678; <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Tatis v. Allied Interstate, LLC</u>, 882 F.3d 422, 426 (3d Cir. 2018) (quoting <u>Iqbal</u>, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678).

Applying the principles of <u>Iqbal</u> and <u>Twombly</u>, the Third Circuit in <u>Santiago v. Warminster Township</u>, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Id.</u> at 130 (quoting <u>Iqbal</u>, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory

allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>

## IV.    ANALYSIS

### A. Plaintiff fails to state a claim for sex discrimination because she fails to sufficiently allege that her sex was the motivating or determinative factor in Defendant's decision to terminate her employment.

Count I of the Amended Complaint alleges a violation of Title VII of the Civil Rights Act. In her Amended Complaint, Plaintiff avers that her sex was a motivating and determinative factor in Defendant's decision to terminate her. (Doc. No. 6 at 7.) Specifically, she alleges that "[t]he fact that Plaintiff is a woman with whom [her] supervisor felt in competition . . . was a motivating factor in" her termination. (<u>Id.</u>) To the contrary, in the Motion to Dismiss, Defendant argues that her allegations only show personal animus, not sex discrimination. (Doc. No. 7 at 6-7.)

Title VII makes it an "unlawful employment practice for an employer ... to discriminate against any individual . . ., because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). <u>See also</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787

(3d Cir. 2016).  In 1991, Congress amended Title VII to further specify that, "[e]xcept as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." Connelly, 809 F.3d at 787 (citing 42 U.S.C. § 2000e–2(m)).

Under Title VII, there are two ways a plaintiff can state a claim for discrimination, "pretext" and "mixed-motive," with each theory applying a different standard of causation. Watson v. Southeastern Pennsylvania Transportation Authority, 207 F.3d 207, 214-15.  (3d Cir. 2000).  In a "pre-text" case, the complaint must allege that consideration of the impermissible factor was "a determinative factor" in the adverse employment action.[8]  Id.  In a "mixed-motive" case, a plaintiff may show that the employment decision was "the result of multiple factors, at least one of which is illegitimate."[9]  Id. at 215 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989)).  The Third Circuit has interpreted the 1991 amendment and it's "motivating factor" language to apply only to "mixed-motive" cases.  Watson, 207 F.3d at 214–20.

Here, the Amended Complaint attempts to proceed under both theories.  For instance, it provides:

> 45.  The reasons stated for Plaintiff's termination was pretextual; or in the alternative, Defendant had a "mixed motive" for Plaintiff's termination.  Plaintiff's termination was motivated by Defendant's discriminatory intent.
>
> 52.  Plaintiff's sex, female, was a motivating factor in discriminating against Plaintiff.  In addition, or in the alternative, Plaintiff's sex, female, was a determinative factor in Defendant's decisions to discriminate against Plaintiff.

---

[8]  The "pretext" theory was established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[9]  The "mixed-motive" theory was set forth first in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

(Doc. No. 7 ¶¶ 45, 53.)

At the Motion to Dismiss stage, Plaintiff need not state which theory she intends to proceed

under.  As the Third Circuit explained in <u>Connelly</u>,

> The distinction between those two types of cases "lies in the kind of
> proof the employee produces on the issue of [the employer's] bias,"
> and identifying the proof before there has been discovery would
> seem to put the cart before the horse.  Indeed, we have said that,
> even at trial, an employee "may present his case under both
> theories," provided that, prior to instructing the jury, the judge
> decides whether one or both theories applies.

809 F.3d at 788 (internal citations omitted).  And at the initial pleading stage, Plaintiff only needs

"to allege sufficient facts to raise a reasonable expectation that discovery will uncover" that her

status as a woman played either a motivating or determinative factor in Defendant's decision to

fire her.  <u>Id.</u> at 789, 791.

As stated in her Response in Opposition to the Motion to Dismiss, Plaintiff premises most

of her claim on the decision in <u>Bostock</u>.  The holding in <u>Bostock</u> is clear: an employer cannot take

an adverse employment action against an employee for being gay or transgender because it shows

that such action was taken because of the employee's sex.  140 S. Ct. at 1754.  Plaintiff expands

on this holding to assert that an employer cannot fire an employee "because of who she was

attracted to."[10]  (Doc. No. 11 at 5.)

---

[10]   Alternatively, Plaintiff attempts to plead that "sex," when used as a verb, "was a motivating
factor for the unlawful employment practice."  (Doc. No. 6 at ¶ 56.)  This contention
contradicts the "fundamental canon of statutory construction that the words of a statute must
be read in their context and with a view to their place in the overall statutory scheme."  <u>Maner</u>,
9 F.4th at 1122 (quoting <u>Home Depot v. Jackson</u>, 139 S. Ct. 1743, 1748 (2019)).  The Title
VII protections are race, color, religion, sex, or national origin.  Thus, "sex", when used as a
verb, does not fit in the overall statutory scheme and is not one of the protections under Title
VII.  <u>Id.</u>

The facts in this case are akin to what is known as "paramour preference," "which posits that an employer engages in unlawful sex discrimination whenever a supervisor's relationship with a sexual or romantic partner results in an adverse employment action against another employee." Maner v. Dignity Health, 9 F.4th 1114, 1118-19 (9th Cir. 20210).  Generally, this describes the scenario in which a supervisor is having a romantic affair with an employee which causes that employee to receive certain employment benefits (i.e. a promotion) over other employees.  See, e.g., DeCintio v. Westchester County Medical Center, 807 F.2d 304 (2d Cir. 1986).  The same holds true in Plaintiff's case, but instead of receiving any benefits, she was terminated.  Diamond and Mr. Whetstine's previous romantic relationship resulted in an adverse employment action against Plaintiff.  Put differently, Plaintiff and Mr. Whetstine's relationship caused Diamond to take adverse employment actions against her.

While the Third Circuit has not ruled on the viability of a "paramour preference" claim, all Circuit Courts of Appeals that have ruled on it have held that such claims are not actionable under Title VII.  See Maner, 9 F.4th at 1121-22 (stating that the Second, Fourth, Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits have all held that "paramour preference" claims are not viable under Title VII).  In Maner, the plaintiff, similar to Plaintiff in this case, argued that Bostock allows for a paramour preference claim to proceed under Title VII.  Id. at 1119.  The Ninth Circuit rejected that argument, holding as follows:

> Maner's "paramour preference" reading of Title VII fails Bostock's test.  To determine whether an employer discriminated based on sex in violation of Title VII, we ask "if changing the employee's sex would have yielded a different choice by the employer."  In the "paramour preference" scenario, the answer is no. The employer discriminates in favor of a supervisor's sexual or romantic partner and against all other employees because they are not the favored paramour, no matter the sex of the paramour or of the complaining employees.  Changing the sex of the complaining employees would not yield a different choice by the employer because the identity of

> the favored paramour would remain the same.  The motive behind
> the adverse employment action is the supervisor's special
> relationship with the paramour, not any protected characteristics of
> the disfavored employees.

Id. at 1122 (internal citations omitted).

The same holds true here for Plaintiff.  No matter if the sex of Mr. Whetstine, Diamond, or Plaintiff changed, Defendant's decision to terminate Plaintiff was because of her relationship with Mr. Whetstine.[11]  The motive behind the adverse employment actions was Plaintiff's relationship with Mr. Whetstine, not any protected characteristic of any of them.  Further, Plaintiff as the "chosen paramour" remains the same no matter her sex.  See Maner, 9 F.4th at 1122.  Thus, viewing the allegations in the Amended Complaint in a light most favorable to Plaintiff, she has not alleged sufficient facts to raise a reasonable expectation that discovery will uncover that her sex was either a motivating or determinative factor in Defendant's decision to terminate her.  It was merely her relationship with Mr. Whetstine that led to her termination.  Thus, Plaintiff has not plausibly stated a claim for sex discrimination and Defendant's Motion to Dismiss as to Count I will be granted.

### B. Plaintiff fails to state a claim for sexual harassment because she has not sufficiently pled a severe or pervasive hostile work environment or quid pro quo conduct.

Count II asserts a claim for sexual harassment against Defendant.  (Doc. No. 6 at 8-9.)  As stated previously, there are two types of sexual harassment that are actionable under Title VII: 1)

---

[11]  This scenario is described in the Amended Complaint.  (See, e.g., Doc. No. 6 at ¶ 54.)  In her Opposition, Plaintiff states that if Plaintiff were a man, and the sex of Diamond and Mr. Whetstine were also changed, "the sex of plaintiff would still play an essential but-for role in the adverse employment action."  (Doc. No. 11 at 6.)  This argument is unavailing.  If the sexes of all three people were changed, Plaintiff would still have been fired because of her (now his) romantic relationship with Mr. (now Mrs.) Whetstine.  Under each scenario, Plaintiff as the "chosen paramour" remains the same.

hostile work environment and 2) <u>quid pro quo</u> sexual harassment.   <u>Burlington Industries, Inc. v.</u>
<u>Ellerth</u>, 524 U.S. 742, 752 (1998) (citing <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 65
(1986).  The Amended Complaint asserts violations under both theories.  (<u>See</u> Doc. No. 6 at 8-9.)
Each will be discussed in turn.

### 1.  Hostile Work Environment

To succeed on a hostile work environment claim, the plaintiff must establish that 1) the
employee suffered intentional discrimination because of his/her sex, 2) the discrimination was
severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination
would detrimentally affect a reasonable person in like circumstances, and 5) the existence of
<u>respondeat superior</u> liability." <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 167 (3d Cir.
2013).   Here, as outlined in detail above, Plaintiff has not alleged intentional discrimination
because of her sex.   Title VII only protects against harassment based on discrimination against a
protected class.  It is not "a general civility code for the American Workplace."  <u>Oncale v.</u>
<u>Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80-81 (1998).   Thus, she cannot meet the first
element of a hostile work environment claim and her claim necessarily fails.

In any event, the Court will consider whether Plaintiff has sufficiently alleged conduct that
is severe or pervasive.  To prove this second element, a plaintiff must allege that "the workplace
is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or
pervasive to alter the conditions of the victim's employment and create an abusive environment."
<u>Torres v. Deblasis</u>, 959 F.Supp.2d 772, 782 (E.D. Pa. 2013) (quoting <u>Nat'l R.R. Passenger Corp.</u>
<u>v. Morgan</u>, 536 U.S. 101, 116 (2002)).   Further,

> [W]hether an environment is sufficiently hostile or abusive must be
> judged by looking at all the circumstances, including the frequency
> of the discriminatory conduct; its severity; whether it is physically
> threatening or humiliating, or a mere offensive utterance; and

> whether it unreasonably interferes with an employee's work
> performance.

Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001)). Finally, "[s]everity and pervasiveness are alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." Castleberry v. STI Group, 863 F.3d 259, 264 (3d Cir. 2017) (citations omitted).

In her Amended Complaint, Plaintiff claims that Defendant's conduct was both pervasive and severe. She claims the following incidents show a hostile work environment. First, that Diamond refused to sign off on Plaintiff's raise in salary. (Doc. No. 6 ¶ 25.) Second, the August 2019 meeting with Human Resources where she was asked questions "in a menacing and threatening manner." (Id. ¶ 26.) (See also Doc. No. 11 at 7.) Third, Plaintiff was denied overtime while on FMLA leave. (Id. ¶ 28.) Fourth, Doan stood over Plaintiff's shoulder to make sure she clocked out on time and scanned her timesheets. (Id. ¶¶ 34-35.) Finally, that Doan made comments that Diamond was "gunning for" Plaintiff and that Diamond's treatment of her was "personal." (Id. ¶¶ 35, 37.) These incidents, however, do not amount to a hostile work environment because they are neither severe nor pervasive.

Court decisions support this conclusion. In Saidu-Kamara v. Parkway Corp, a parking lot attendant claimed that she was being sexually harassed by her supervisor. 155 F.Supp.2d 436, 439 (E.D. Pa. 2001). Her claim was premised on four events that took place over an eighteen-month period. Id. These incidents included her supervisor inappropriately touching her, making suggestive comments, and propositioning her. Id. at 439-40. The Court found that these incidents, while inappropriate, were only sporadic and isolated incidents. Id. at 340. Further, other than the

touching, the Court determined that none of the incidents were sufficiently severe to support a hostile work environment claim.  Id.

Likewise, in Chinery v. American Airlines, a flight attendant alleged that several fellow flight attendants posted offensive remarks about her on Facebook during a union election.  778 Fed.Appx. 142, 143-44 (3d Cir. 2019).  The posts contained "insulting photographs, posts referring to [plaintiff] and her supporters by using derogatory language, and a post warning that the author believed he was being 'f\*\*ked with' by those campaigning against Union incumbents."  Id. at 145-46.  In ruling in favor of the airline, the Third Circuit found that while some posts may have been offensive, "'offhand comments and isolated incidents' that are insufficiently extreme" do not amount to a hostile work environment.  Id. at 146 (internal citation omitted).

Here, Plaintiff contends that her supervisor looking over her shoulder, her denial of a raise or overtime pay, the Human Resources investigation, and Doan's comments are pervasive and severe. (Doc. No. 11 at 7-8.)  However, none of these incidents are sufficiently severe to support a claim under Title VII.  They do not involve physical contact or conduct that is physically threatening or humiliating.  The bar for severity is high, and "courts have found conduct more egregious" fails to demonstrate a hostile work environment.  Nitkin v. Main Line Health, 2021 WL 48660742 at \* 13 (quoting Saidu-Kamara, 155 F.Supp.2d at 436.)  Further, Doan's statements to Plaintiff are merely offhand comments that do not amount to a hostile work environment.  Additionally, the events are not pervasive.  These five (at most) occurrences happened over a ten-month period, lending themselves to be categorized as isolated incidents rather than frequent harassment.  Therefore, insofar as Count II relies on a claim for hostile work environment, Defendant's Motion to Dismiss will be granted.

### 2.  Quid Pro Quo Sexual Harassment

To state a claim for <u>quid pro quo</u> sexual harassment, a plaintiff must show "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual...." <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1296 (3d Cir.1997) (quoting 29 C.F.R. § 1604.11(a)(1) and (a)(2)).

Here, Plaintiff claims that she has pled <u>quid pro quo</u> sexual harassment because she believed that ending her relationship with Mr. Whetstine was the only way she would be able to keep her job.  (<u>See</u> Doc. No. 6 at ¶ 63.)  However, this does not rise to the level of being a <u>quid pro quo</u> claim.  None of the statements or conduct by Diamond, Poyte, and Doan alleged in the Amended Complaint are "of a sexual nature."  At most, they merely demonstrate that Diamond was jealous of Plaintiff's relationship with Mr. Whetstine.  Therefore, Defendant's Motion to Dismiss Count II of the Amended Complaint will be granted.

### V.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 7) filed by Defendant Woods Services will be granted and Counts I and II of the Amended Complaint (Doc. No. 6) will be dismissed.  An appropriate Order follows.